IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES OF AMERICA          :
                                  :
          v.                      :          CRIMINAL NUMBER 13-083-GMS
                                  :
                                  :
AMY GONZALEZ                      :

<u>ORDER</u>

AND NOW, this          Day of                    , 2014, it is ORDERED that the

defendant's Motion to Dismiss the Indictment  is

**GRANTED.**

BY THE COURT:

_____
                                    J.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES OF AMERICA          :
                                  :
         v.                       :          CRIMINAL NUMBER 13-083-GMS
                                  :
                                  :
AMY GONZALEZ                      :

**MOTION TO DISMISS THE INDICTMENT AS TO AMY GONZALEZ**

Defendant, Amy Gonzalez, by and through counsel, Jeremy H. Gonzalez Ibrahim, requests that the Court dismiss the Indictment filed against her and in support thereof it is respectfully represented:

1. Amy Gonzalez was indicted by a Grand Jury for the District of Delaware on an Indictment filed August 6, 2013, alleging violation of Title 18 U.S.C. §2261 and §2261A, as well as conspiracy and aiding and abetting the commission of these offenses.

2. The Indictment filed against Amy Gonzalez does not allege that she traveled in interstate commerce.

3. The Indictment filed against Amy Gonzalez does not allege any unlawful conduct that may serve as a basis for the charges against her.

4. The Indictment alleges that Amy Gonzalez engaged in conduct that is protected activity under the 1st Amendment to the U.S. Constitution, to wit, as applied to Amy Gonzalez, Title 18 U.S.C. §2261(A) violates the Free Speech Clause of the First Amendment because it is overbroad and implicates a broad range of otherwise constitutionally protected speech and is unconstitutionally vague and violates the defendant's due process rights under the Fifth Amendment in that the statute does not give notice as to what specific conduct is unlawful.

5.   The attached Memorandum of Law is incorporated  herein by reference.

6.   Defendant Lenore Matusiewicz, by and through her counsel, join in this motion.

WHEREFORE, for the foregoing reasons, Amy Gonzalez respectfully requests that the Court grant the Motion to Dismiss the Indictment filed against her, or in the alternative, strike such portions that violate her  rights.

Respectfully submitted,


_____/s/_____
JEREMY H.G. IBRAHIM, ESQUIRE
Attorney for Amy Gonzalez

Date: March 14th 2014

CERTIFICATE OF SERVICE

I certify that a copy of the herein Motion To Dismiss and the accompanying Memorandum of

Law was served upon the below listed individuals via ECF.

Jamie McCall, AUSA
United States Attorney's Office
Nemours Building
1007 Orange Street
Suite 700
Wilmington, DE 19801

Edson Bostic, Esq.
Dina Chivar, Esq.
Office of the Federal defender
800 N. King Street
Wilmington, DE 19801

Kenneth C. Edelin, Jr., Esq.
2 Penn Center Boulevard
Philadelphia, PA 19102


_____/s/_____
Jeremy H. G. Ibrahim
Appointed Counsel for Amy Gonzalez

DATE: March 14, 2014

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 13-083-GMS |
| | : | |
| | : | |
| AMY GONZALEZ | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
THE INDICTMENT AS TO AMY GONZALEZ**

THE INDICTMENT

An Indictment dated August 6th 2013 was returned by a federal grand jury in the District

of  Delaware wherein Amy Gonzalez is charged in Count I with violation of 18 U.S.C. §371

(Conspiracy to commit the offenses against the United States of Interstate Stalking (18 U.S.C.

§2261A(1) and 2261(b)) and Cyberstalking (18 U.S.C. 2261A(2)(A) and (B), 2261(b) and (2)).

Amy Gonzalez is also charged in Count IV with the substantive offense of Cyberstalking ((18

U.S.C. 2261A(2)(A) and (B), 2261(b) and (2)). The Indictment contains approximately 102

consecutively numbered paragraphs. Restated below are the allegations throughout the

Indictment that relate to alleged conduct of Amy Gonzalez and/or the co-defendants.[1]

PARAGRAPH [1]: alleges the biological relationship between the three co-defendants

and an uncharged individual. All individuals are further grouped for identification purposes

within the Indictment as the "MATUSIEWICZ Family."[2]

---

[1]The restatement of the Indictment is not an admission to any of the facts averred therein.

[2]This identifier, however, is not strictly adhered to, for example, in paragraph 90 states that "From on or about February 7, to on or about February 10, 2013, the MATUSIEWICZ Family spent much of this time period in New Jersey visiting relatives." This is false and misleading. Amy Gonzalez at no time traveled to New Jersey during this time period. In fact, Amy Gonzalez was at home in Texas with her husband and young daughter, working as a licensed nurse at two hospitals.

1

PARAGRAPH [2] - [19]: allege an apparent discordant history and relationship exclusively involving Christine Belford and the co-defendants and children spanning a time period from October 2001 through September 5th 2012. These paragraphs involve allegations of marriage, divorce, custody battles, accusations of child abuse, international flight, international kidnaping, international arrest, state and federal prosecution, conviction and sentencing, and finally termination of parental rights of a co-defendant.

PARAGRAPH [21]: alleges in Count I that sometime in or around the time period of December 2009 "through on or about" February 15th 2013, Amy Gonzalez conspired with the co-defendants, along with the deceased Thomas Matusiewicz, to commit the offense of Interstate Stalking and Cyberstalking.

PARAGRAPH [22]: sets forth the government's claims that the object of the conspiracy that the defendant is alleged to have been part of as to commit the offenses against "Christine Belford and members of her immediate family, including Jane Doe 1, 2, 3, and 4 and the spouse or intimate partner of Christine Belford" (Paragraph [3] identified Jane Doe 1,2,3, and 4 as the children of Belford and a co-defendant, and Ms. Belford's child from a prior relationship), through the use of interactive computer services and facilities of both interstate and foreign commerce. Presumably, the foreign commerce aspect relates to the international kidnaping conduct and convictions of the co-defendants as recounted in paragraphs [6], [8], [11], [12], [13], [18], and [19]. This paragraph alleges with specificity that the co-defendants and the deceased Thomas Matusiewicz traveled in interstate commerce with specific intentions toward Christine Belford and others.

<u>MANNER AND MEANS</u>

PARAGRAPH [23][a] through [c] sets forth the manner and means by which the government alleges that Amy Gonzalez committed the offenses of Internet Stalking and Cyberstalking. In sum, the government alleges that through the use of traditional mail, use of third party surveillance and information gathering, and the internet, the defendant (or in conspiracy with co-defendants)  made claims, such claims that the government categorizes as false and defamatory, that Christine Belford engaged in physical and sexual abuse, and parental neglect of one or more of the children. Additional  claims were  that Christine Belford committed other crimes such as poisoning a co-defendant and threatened to sell the children for money.

<u>OVERT ACTS</u>

PARAGRAPH [25] through [90] sets forth the alleged overt acts, separated by years 2009, 2010, 2011, and 2012, but include allegations going into 2013. The conduct alleged that serves to constitute the overt acts consists of the following:

    1. **2009**: Receipt by Amy Gonzalez of an  unsolicited  letter from a co-defendant requesting that she make repeated and anonymous complaints to DYFS; request the help of L.M, C.E., C.C., and anyone trusted to help; and to make sure that a website belonging to M.K. is up and has the "true story on it and is well publicized." The very next averment is that a co-defendant actually caused M.K. to post an internet webpage that accused Christine Belford of  physical and sexual abuse, and parental neglect of one or more of the children.

    2. **2010:** In February Amy Gonzalez is alleged to have made attempts to obtain the contact information of Barbara Walters for the alleged  purpose of sending

3

Ms. Walters information on the website run by M.K. wherein Christine Belford is accused of physical and sexual abuse, and parental neglect of one or more of the children. In October a co-defendant is alleged to have sent two (2) detailed letters to the Family Court Guardian Ad Litem for the children that accused Christine Belford of physical and sexual abuse, and parental neglect of one or more of the children and a second correspondence that also claimed that Christine Belford had mental health issues, to wit, multiple personality disorder. In November Amy Gonzalez is alleged to have sent an email to D.M. that accuses Christine Belford of physical and sexual abuse, and parental neglect of one or more of the children.

3. **2011:** In January Amy Gonzalez and a co-defendant are alleged to have "purported to undergo" a polygraph exam that they put forward as corroboration that the accusation that Christine Belford committed physical and sexual abuse, and parental neglect of one or more of the children. Amy Gonzalez is further alleged to have provided a co-defendant with a letter informing this co-defendant that the polygraph results had been mailed to twenty people. A co-defendant is alleged to have mailed a letter to J.P., "person known to Christine Belford," accusing Christine Belford of physical and sexual abuse, and parental neglect of one or more of the children. The co-defendants are alleged to have "caused" the webpage "GIC" to publish the true names of Christine Belford and the children, with the notice that the names were used by the request and permission of one of the co-defendants. Also in January, it is alleged that Amy Gonzalez created a YouTube account under the name "22agonzalez" and sent an email to someone

4

requesting assistance in uploading a surreptitiously recorded surveillance video of Christine Belford and some of the children to YouTube, and the results of the polygraph examination of Amy Gonzalez wherein she accuses Christine Belford of physical and sexual abuse, and parental neglect of one or more of the children. In March, the Indictment alleges that an unidentified YouTube user, under the name of "voice4dvoiceless" posted two videos entitled "Don't Hurt Me Mommy" and "Another Unresolved Delaware Child Abuse Case" of Christine Belford and some of the children outside of a residence engaging in what the Indictment characterizes as "playing." In April, an unidentified YouTube user under the name of "voice4dvoiceless" is alleged to have posted a video titled "Another Unsolved Delaware Abuse Case" on YouTube, depicting Christine Belford and some of the children outside of a residence engaging in what the Indictment characterizes as "playing." Also posted were the results of the polygraph examination of Amy Gonzalez and a co-defendant wherein they accuse Christine Belford of physical and sexual abuse, and parental neglect of one or more of the children. Subsequent to this time period, the Indictment alleges that YouTube username "22agonzalez" posted numerous false and defamatory electronic messages regarding Christine Belford, and it is alleged that in one specific instance it "directed people" to go to the GIC webpage to learn the "true history of this case" against Christine Belford. Subsequent to this event, the Indictment alleges that the unidentified username "senorafran" posted an electronic message on the message board alleged to be associated with the videos stating in part "You don't know what goes on behind closed doors - molestation,

5

poisoning, cruelty. Go to : JONBENETSTRUECASEHISTORY.COM click on 'GRANDMOTHER' . . . " In May, an individual identified as C.B. became friends on Facebook with Christine Belford.  C.B. received personal information and updates from directly from Christine Belford, regarding Belford's personal life and that of the children. It is alleged that C.B. was high school friends with Amy Gonzalez and one of the co-defendant's. Also in May, Thomas Matusiewicz is alleged to have mailed a letter to the Guardian Ad Litem for some of the children which contained detailed information about Christine Belford's unidentified spouse. In June the Indictment alleges that a co-defendant sent an email to Thomas Matusiewicz and a co-defendant (not Amy Gonzalez) listing the schools and church that his children attended instructing them to send letters with the abuse allegations against Christine Belford so that possibly his children would open up to one of these people about the abuse. Thomas Matusiewicz is alleged to have sent an email to Amy Gonzalez with school information regarding Jane Doe 2, with a request that the information be passed on to a co-defendant. In June an unsigned letter was sent to Jane Doe 2's school wherein Christine Belford is accused of physical and sexual abuse, and parental neglect of one or more of the children.  A letter was sent by Thomas Matusiewicz to Jane Doe 2's school wherein Christine Belford is accused of physical and sexual abuse, and parental neglect of one or more of the children. This same letter is alleged to have been sent in July by Thomas Matusiewicz  to a church official at a church Christine Belford and the children are purported to have attended. In August, the Indictment alleges the parental rights of David Matusiewicz were terminated, and

that a co-defendant sent the polygraph results accusing Christine Belford of physical and sexual abuse, and parental neglect of one or more of the children, to the school of Jane Doe 1. Also in August, it is alleged that C.B. sent an email to Amy Gonzalez with a photograph of Jane Doe 1, with a message stating "please copy & send to dave! :) love u all!!!!! remember shhhhhhhhh!!! . . .LOL."  Amy Gonzalez is alleged to have sent an email to CNN entitled "THE TRUTH ABOUT DAVID MATUSIEWICZ AND HIS CHILDREN," along with two attachments that referenced that  Christine Belford was accused of physical and sexual abuse, and parental neglect of one or more of the children. In September, Thomas Matusiewicz allegedly requested that B.G., a real estate agent, provide him with personal information regarding Christine Belford. Also in  September, Christine Belford is alleged to have sent an email to her church administrator denying the accusations of abuse and thanking the church for their support. In October the Indictment alleges that Thomas Matusiewicz and Amy Gonzalez asked their friends C.C. and S.P. "to drive across state lines to conduct physical surveillance of Christine Belford's" residence and provide information about those that are seen at the home. A co-defendant allegedly sent an email to B.G. for providing information to Thomas Matusiewicz about he residence; a copy of this email was sent to Amy Gonzalez. It is averred that C.C. called Amy Gonzalez and provided her with a license plate number of a car parked outside of Christine Belford's home. Amy Gonzalez is alleged to have thanked C.C. and S.P. for the information. Thomas Matusiewicz is alleged to have asked C.C. to drive past the residence of the attorney who represented Christine Belford in a 2009 lawsuit

7

against the co-defendants and Amy Gonzalez; C.C. refused to d o this for Thomas Matusiewicz. In November, the Indictment alleges that a co-defendant mailed a letter to Christine Belford wherein the co-defendant admonished Belford that she would be to blame if anything happened to an incarcerated co-defendant. This same letter also accused Christine Belford of threatening the co-defendant by sending Godiva Chocolatier catalogs. In December the Indictment alleges that two of the co-defendants traveled to Delaware from out of state, and, along with a licensed private investigator, who had previously conducted surveillance on Christine Belford and the children, knocked on the door of Belford's residence. The co-defendants and the private investigator left the property as requested by the person who answered the door. In mid-December, B.G., a real estate agent, is alleged to have sent two emails to co-defendants providing the real estate listing with photos of Belford's home which was being put up for sale.

4. **2012:** The Indictment alleges in April that C.B. sent an email to Amy Gonzalez revealing that Christine Belford had told C.B. that Belford was having nightmares about a co-defendants' release from prison. In May, the Indictment recounts an alleged conversation between C.B. and Amy Gonzalez regarding predicting Belford's "next moves . . ."[3]  In June a co-defendant is alleged to have sent a

---

[3]To ensure that the conversation is not taken out of context, a more complete account is placed below. It is clear that Amy Gonzalez and C.B. are discussing Christine Belford's predictability with male companions.

```
> >You are exactly right. Now you know how to predict chris a little better..she
always has another man waiting so she is not alone.
> >She wants to appear unpredictable but we are actually learning how to predict her
next moves
```

letter to Christine Belford regarding obtaining information about his children. Also in June, Christine Belford is alleged to have sent a letter to Amy Gonzalez and a co-defendant complaining that past behavior has "scarred the children enough." A co-defendant is alleged to have sent an email to someone wherein he contemplates his next step to get his children "safe from their abusive mother." In July, the Indictment alleges that a co-defendant emails C.B. referring to a letter received from Christine Belford stating "DO NOT CONTACT ME" and conveying that he would never stop trying to see his children. A co-defendant is alleged to have sent an email to C.B. wherein he expresses his disdain for Christine Belford. C.B sends an email to a co-defendant with information on Belford's Facebook activity, including that Belford has a new boyfriend. A co-defendant is alleged to have sent an email to Amy Gonzalez and another co-defendant that had a digital photo of Belford and the children. The same picture had been posted on Belford's Facebook page. In August a co-defendant is alleged to have sent a series of emails to C.B. about the use of a private investigator, multiple friends, patients watching his children since they were returned to "their abusive mother's care." It is further alleged that the co-defendant in a series of emails with C.B. attests that no one had a problem with what he did to protect daughters, but he was not supported by the Delaware State courts, and it was "time to fix that." C.B. is alleged to provide a co-defendant with access to her Facebook account so the co-defendant can visit the Facebook page of Christine Belford. The co-defendant makes it clear that Amy Gonzalez is not to be involved and the scheme is between C.B. and the co-defendant only. In September a co-

9

defendant is alleged to have emailed someone  wherein he laments his custody losses and move from Delaware, and says that he will see his children one way or another. Upon release from custody, a co-defendant is alleged to have requested permission from officials to travel to New Jersey, which was denied. B.G. is alleged to have sent an email to Thomas Matusiewicz and a co-defendant regarding a license plate that C.B. recorded when she drove past Christine Belford's residence. A co-defendant is alleged to have created a Facebook page wherein Christine Belford is accused of sexually abusing Jane Doe 1. It is alleged that in October Amy Gonzalez received an email from a co-defendant wherein the co-defendant states he won't give up trying to get custody of his children until he has drawn his last breath. A co-defendant is alleged to have emailed C.B. and told C.B. that many people are watching his children. In November the Indictment alleges that a co-defendant emailed Amy Gonzalez and wrote "prepare yourself to be managing 4 by this time in 2013 . . . " The Indictment also alleges that in November, a co-defendant created a Facebook account under an assumed name and searched for Christine Belford through this account. A co-defendant is alleged to have made a second request to officials for permission to travel to New Jersey; said request was denied. A co-defendant filed a petition to reduce child support payments with the Delaware State Family Court. In December, the Indictment alleges that Thomas Matusiewicz and a co-defendant sent an email to B.G. thanking her for helping keep 'tabs' on "our girls well being."

5. **<u>2013:</u>** A co-defendant is alleged to have submitted a request to officials to travel to Family Court in Delaware on February 11, 2013 for a child support

hearing, leaving blank the names of those with whom he would be traveling. Permission was granted. The co-defendant allegedly emailed Amy Gonzalez and intimated that the co-defendant and others would be heading north on February 4 through February 14.  Thomas Matusiewicz allegedly received a Veterans Affairs benefit booklet on 1/16/2013 which had written on it "Vets Funeral Arrangements," "Tom Matusiewicz Rec'd 1/16/2013," and "my military number (xxxx)." This booklet and print out of Veterans Administration cemeteries were alleged to have been located in the residence wherein Thomas Matusiewicz lived with co-defendants. It is alleged that a laptop computer found in a vehicle allegedly used by Thomas Matusiewicz and a co-defendant , was used to conduct internet searches for a funeral home in New Jersey. The Indictment alleges that sometime unknown prior to leaving his home in Texas, Thomas Matusiewicz left a note for Amy Gonzalez in his home[4] that purported to have instructions regarding his property and had written as taken from the Indictment "HOPEFULLY WE CAN END THIS BS NOW - UP TO DAVE." The Indictment alleges that Thomas Matusiewicz and co-defendants traveled from February 4, 2013 arriving in the Delaware Valley on or about February 7, 2013, in two separate vehicles - one of which is alleged to have contained numerous weapons, photographs of Christine Belford and children, as well as other items. The Indictment alleges that from February 7 through 10, 2013, Thomas Matusiewicz

---

[4] Amy Gonzalez lived in a separate home and not with Thomas Matusiewicz.

11

and co-defendants[5] spent time in New Jersey visiting relatives, and upon

departure, Thomas Matusiewicz is alleged to have provided a handgun which was

registered to one of the co-defendants, to one of his relatives.

PARAGRAPHS[91] through [95] although alleged overt acts, recount the

government's best effort to describe the events that led to the killing of Christine

Belford and L.M.

PARAGRAPH[96] of the Indictment alleges that on February 15 2013, by check

dated February 12, 2013, Amy Gonzalez sought to file a petition for custody of

her nieces.

The above averments serve as the basis for all of the remaining counts, specifically Count IV,

wherein Amy Gonzalez is accused of Cyberstalking. This defendant does not face a substantive

count for Interstate Stalking.

ARGUMENT

"Congress shall make no law . . . abridging the freedom of speech . . . " U.S. Const.

Amend I.  The U.S. Supreme Court has held that "The First Amendment literally forbids the

abridgment only of "speech," but we have long recognized that its protection does not end at the

spoken or written word." Texas v. Johnson, 491 U.S. 397, 404 (1989). The allegations against

Amy Gonzalez are a criminalization of conduct she engaged in to express her opinion regarding

her beliefs about the suitability of Christine Belford to have custody of her nieces.  ". . . conduct

may be "sufficiently imbued with elements of communication to fall within the scope of the First

and Fourteenth Amendments," Ibid at 404 citing Spence v. Washington, 418 U.S. 405, 409

---

[5] The Indictment states "the MATUSIEWICZ Family" but this is false and misleading. Amy
Gonzalez never traveled to Delaware, rather she was at home in Texas at work and with her husband
and young daughter.

(1974). The defendant is alleged to have used the internet and its' various outlets (email, YouTube), the postal service (traditional mail), a polygraph examiner, anonymity and surveillance via third-parties (private investigators, friends) in a manner that the government finds to be in violation of 18 U.S.C. §2261A(2)(A) and (B). This conduct however, in their totality, served as expressions of the defendant's sincere belief, and expression thereof, regarding defendant's opinion of Christine Belford. First Amendment protection and freedom of speech apply to the Internet and online speech. *See* Reno v. ACLU, 521 U.S. 844, 870 (1997). The principles of freedom of speech do not vary when a new or different medium for communication comes inot play. *See* Brown v. Entertainment Merchants Association, 564 U.S. __ __ , 131 S.Ct. 2729, 2733 (2011).

The allegations relating to the defendant concealing her identity, to the extent such was the case, does not lift the protection of the First Amendment. "Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342(1995). Notwithstanding the belief in the allegations harbored by the defendant with regards to Ms. Belford, the Indictment takes the position that the defendants accusations are unfounded, and found to be baseless by the courts. The defendant is nonetheless entitled to her position. This is because "As a general matter, we have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate 'breathing space' to the freedoms protected by the First Amendment." Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56,(1988). *See also*, e.g., New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). A "dignity" standard, like the "outrageousness" standard that we rejected in Hustler, is so inherently subjective that it would be

inconsistent with "our longstanding refusal to [punish speech] because the speech in question may have an adverse emotional impact on the audience." Hustler Magazine, *supra*, 485 U.S., at 55.

The Indictment against Amy Gonzalez amounts to a content-based restriction on protected speech, and as such must survive strict scrutiny. U.S. v Playboy Entertainment Group, 529 U.S. 803,813 (2000). This is so because the nature of the defendant's claims against Ms. Belford serve as the government's basis or overt acts to establish the intent needed to prove the *mens rea* element of the offense. To wit, the effect of the defendants expression/speech on others is what is being regulated by the statute at issue. "Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists. We are expected to protect our own sensibilities "simply by averting [our] eyes." Cohen v. California, 403 U.S. 15, 21 (1971). This being said, the actual  effect of the defendant's expressions on anyone are unclear as applied in defendant's prosecution. No factual claim is made in the Indictment that anyone (Belford, Jane Doe 1, 2, 3, or4, or Ms. Belford's significant other) was aware of her expressive conduct (emails between co-defendants, emails between the defendant and C.B., C.C., S.P., B.G. or anyone else, the posting of YouTube videos, polygraph results, etc.) to any degree, but definitely not to a degree that would remove First Amendment protection.

Noteworthy is that there are no legitimate  allegations that the defendant made any threats to Christine Belford, Jane Doe 1, 2, 3, or 4, or the significant other of Ms. Belford. The nature of  the defendants speech was to advocate her firm belief that her nieces were not in a safe environment. No allegation is made that Amy Gonzalez traveled in interstate or foreign commerce, because in fact she did not do so. No allegation is made that the defendant directed

any communications to Ms. Belford, Jane Doe 1, 2, 3, or 4, or the significant other of Ms.

Belford. Indeed, all of the conduct for which Amy Gonzalez is being prosecuted relates to her

First Amendment freedom of expression, all of which was done with transparency, as she often

sought the assistance of third party's to help her express her concerns regarding Ms. Belford.

Furthermore, due process requires that the defendant have had adequate notice that as to what

conduct is unlawful, "for no man shall be held criminally responsible for conduct which he

could not reasonably understand to be proscribed." Buckley v. Valeo, 424 U.S. 1, 77 (1976).

"Where First Amendment rights are involved, an even greater degree of specificity" is required."

Ibid at 77 *citing* Smith v. Goguen, 415 U.S. 566, 573 (1974). The statute under which the

defendant is charged is clearly aimed at speech and a person's expression, hence the test for

statutory vagueness demands stricter application. "The general test of vagueness applies with

particular force in review of  laws dealing with speech. "(S)tricter standards of permissible

statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a

man may the less be required to act at his peril here, because the free dissemination of ideas may

be the loser." Hynes v. Mayor &Council of Borough of Oradell, 425 U.S. 610, 620 (1976) citing

Smith v. California, 361 U.S. 147, 151 (1959).

    None of the conduct/speech attributed to the defendant constituted "true threats."

Similar statutes to the offense the defendant has been charged with violating that have survived

constitutional scrutiny have been those statutes "where a speaker directs a threat to a person or

gropu of persons with the intent of placing the victim in fear of bodily harm or death."  Virginia

v. Black, 538 U.S. 343, 360 (2003). As charged in the Indictment, the defendants criminal

liability hinges on the subjective, unpredictable sensibility of either Christine Belford, Jane Does

1 through 4, or any spouse or intimate partner, as applicable (although the Indictment does not

15

allege that either Christine Belford, Jane Does 1 through 4, or any spouse or intimate partner knew of the conduct/speech alleged in the Indictment). Interestingly, prior to 2005, the statute ascribed criminal liability only for "concrete" harm of causing reasonable fear of the death or serious bodily injury to a person. *See, e.g.,* United States v. Bowker, 372 F.3d 365, 381-382 (6th Cir. 2004), *vacated on other grounds,* 543 U.S. 1182 (2005). In Bowker, the court relied on this "concreteness" to uphold the statute in the face a vagueness challenge.

The language of §2261A(1), §2261A2(A) and (B) , is unconstitutionally vague and the prosecution of Amy Gonzalez for "stalking" must fail as it does not provide sufficient notice of what constitutes criminal conduct and risks arbitrary enforcement. The stalking statute(s) is ambiguous as criminal liability is wedded to the subjective and unpredictable sensibilities of any listener or viewer of the writings/speech/reports that the defendant is alleged to have done that form the factual basis for the charges against her. The rule of lenity requires that ambiguous criminal laws be interpreted in favor of the accused. United States v. Santos, 553 U.S. 507, 513 (2008).

CONCLUSION

The Indictment that charges Amy Gonzalez with violation of of §2261A(1), §2261A2(A) and (B) is clear that the basis of the charges is her speech and conduct related to that speech. The stalking statute with which the defendant is charged depends upon the subjective interpretation of defendant's speech and conduct related to that speech, such that one person ne harassed or intimidated, while another may not. (Although it is inconsequential to the constitutional claims raised by the defendant, there has been no allegation that any of the parties alleged to have been offended by the defendant's speech and conduct related to that

speech ever even read, heard, or saw the what the defendant is alleged to have published.). The

defendant urges the Court to dismiss the Indictment against her for the reasons raised herein.


                                    Respectfully submitted,



                                    ____/s/_____
                                    JEREMY H.G. IBRAHIM, ESQUIRE
                                    Attorney for Amy Gonzalez

Date: March 14th 2014